In the Matter of the Application of THE LONG ISLAND RAILROAD COMPANY, Petitioner, for a Certiorari Order against JOHN F. HYLAN, Mayor of the City of New York, and Others, Constituting the Board of Estimate and Apportionment of the City of New York, Respondents.

First Department, October 31, 1924.

**Municipal corporations — petitioner and city of New York made agreement for elimination of certain grade crossings — board of estimate and apportionment cannot, by resolution, fix liability different from that stated in contract by fixing area of assessment — action of board of estimate and apportionment may be reviewed by certiorari.**

The rights of the petitioner under a contract between it and the city of New York, in reference to the elimination of grade crossings and the payment of the cost thereof, cannot be changed by a resolution of the board of estimate and apportionment fixing the area of assessment to comprise the right of way of the petitioner and declaring that the total expense shall be borne and paid by the real property within the area of assessment; the board of estimate and apportionment has no power to avoid the obligations placed on the city by the contract.

The act of the board of estimate and apportionment in fixing an area of assessment which is clearly wrong in fact and wholly without authority may be reviewed by certiorari.

CERTIORARI ORDER granted out of the Supreme Court at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of July, 1922, directed to John F. Hylan and others, constituting the board of estimate and apportionment of the city of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular their proceedings had in the matter of the opening of Archer avenue, borough of Queens.

*Joseph F. Keany* [*Alfred A. Gardner* of counsel], for the petitioner.

*George P. Nicholson, Corporation Counsel* [*Joel J. Squier* of counsel; *William B. R. Faber* with him on the brief], for the respondents.

MARTIN, J.:

This controversy has been presented to the court pursuant to section 1300 of the Civil Practice Act, upon the return to a certiorari order directing defendants, as members of the board of estimate and apportionment of the city of New York, to certify and return to this court all proceedings, actions, decisions and determinations in the matter of and with respect to the resolution adopted March 31, 1922, by said board relating to the opening of Archer avenue from Sutphin boulevard to New York boulevard, in the borough of Queens, city of New York.

From the return thus made it appears that on March 31, 1922, the board of estimate and apportionment adopted the following resolution:

" *Resolved,* That pursuant to the terms of the agreement between the City of New York and the Long Island Railroad Company, dated July 21, 1911, providing for the elimination of grade crossings of the Long Island Railroad Company, in the Borough of Queens, the entire cost and expense of the proceeding for acquiring title to Archer Avenue, from Sutphin Boulevard to New York Boulevard, be borne and paid by the real property within the area of assessment designated on the following diagram as Zone ' A,' comprising the right of way of the Long Island Railroad Company."

The contract referred to in the foregoing resolution provided for the elimination of grade crossings and outlined the course to be pursued to accomplish that result. It provides in part as follows:

" The ' Long Island ' will also cede to the ' City ' for street purposes where it now owns or may acquire land for the extension or opening of Archer Place from Van Wyck Avenue to Division Street; Johnson Avenue from Van Wyck Avenue to Division Street and unnamed streets proposed on the property now occupied as a freight yard on the southerly side of Fulton Street, between Tyndale Street and Vanderbilt Avenue, as shown on the plans hereto attached.

" In case the ' Long Island ' is unable to purchase the land required for the extension of Archer Place or Johnson Avenue, the ' City ' may acquire the same by the condemnation proceedings and the ' Long Island ' will reimburse the ' City ' for the expense of such condemnation."

The general scope and purpose of the agreement of July 21, 1911, is set forth in the recitals therein, as follows:

" WHEREAS, The ' Long Island,' for its corporate purposes and in order to promote the safety of the public and to facilitate the use of the railroad property of the said ' Long Island,' proposes, among other things, to eliminate all grade crossings on its existing line of railroad between Winfield and Jamaica Avenue, near Dunton; on its Montauk Division through Richmond Hill; and on its Main Line, Montauk. and Atlantic Divisions, through a portion of Jamaica; to construct a new line of railroad between Woodside and Winfield commonly known and referred to as the ' Woodside-Winfield Cut-off '; to lay certain additional tracks; to construct new and extended facilities at Jamaica for handling passengers and freight; to extend or lengthen certain bridges on its main line of railroad; to construct new bridges at certain points upon its railroad; and

" WHEREAS, The ' City ' is desirous and willing that such work be done in order that the development of a permanent street system in The City of New York may be facilitated and unnecessary changes avoided in the grade of the railroad of the ' Long Island,' and in the streets, avenues and highways now crossing said railroad or which may cross it in the future; and in order that all future grade crossings of said railroad by City streets, avenues or highways may be also avoided; and is willing, among other things, to contribute toward the expense of such work a fixed and definite sum of money; and

" WHEREAS, the ' Long Island ' is willing and proposes to convey to The City of New York such rights or interests as it may have or control in certain lands, and to acquire and cede to or reimburse the ' City ' upon its acquisition of certain other lands required for the construction of new or deflected streets, avenues or highways, as hereinafter set forth."

By the terms of the agreement of July 21, 1911, each party undertook certain obligations; the city to close several streets, to grant and convey to the Long Island Railroad Company title to designated property, to change the city map, to bear fifty per cent of the cost of reconstructing the bridge over Queens boulevard for carrying the two existing tracks of the Long Island railroad over the boulevard as widened, to contribute a portion of the expense of eliminating grade crossings and widening several bridges, and to secure performance of matters of detail necessarily included in the improvement. The railroad company agreed to pay a portion of the expense of the improvement, and assumed other obligations incident to the contract.

The city now contends that it was not only empowered to make the improvement but given the right to fix and assess against

the railroad company the cost thereof. We are unable to find any such grant of power giving permission to the city to decide what shall be paid by the petitioner under the contract or to impose on the railroad company, directly or indirectly, a greater proportion of the cost than the contract requires it to pay.

The Greater New York charter (Laws of 1901, chap. 466, § 973, as added by Laws of 1915, chap. 606) permits the board of estimate and apportionment in certain cases to fix the area of assessment with relation to the cost of public improvements, but the board of estimate and apportionment is here acting solely by virtue of a contract. The effect of the resolution is to avoid the obligations placed on the city, as a party to the contract, by attempting to assess property alleged to have been benefited by the improvement. Under the assertion of power granted to make provisions in connection with placing the ultimate burden of paying for public improvements, the city authorities may not determine that the effect of the contract between the parties shall be other than its legal effect.

The corporation counsel argues that the resolution fixing the cost of the work and the area of assessment does not establish a lien nor confirm an assessment for a definite amount against the property of the Long Island Railroad Company; that the resolution authorized a proceeding in the Supreme Court which may or may not result in an assessment of a definite amount against the property of the company; that whether the company's property, which is included within the area of assessment fixed by the resolution, is assessable for the cost and expense of opening Archer avenue, is not a question which may be litigated in this proceeding.

If the city attempted to assess this roadbed independently of the contract obligation, the assessment would be without effect for the reason that a roadbed may not be assessed when there is no benefit from the improvement.

In *Matter of City of New York (Blondell Avenue)* (180 App. Div. 430, 431) Mr. Justice PAGE, writing for the court, said: "I am of opinion that parcel No. 177 cannot be properly assessed for benefit while used for railroad purposes. This property is used exclusively for the Westchester station upon the Harlem Division of the New York, New Haven and Hartford Railroad Company. It is adjoining and necessary to the use of its roadbed in the exercise of its franchise. It is well settled that the roadbed of a railroad company cannot be assessed for local improvements. (*Matter of City of New York [East 136th St.]*, 127 App. Div. 672.) There has been a lack of harmony in the courts of several of the States upon the question of the liability of property used as a railroad

station to such assessment. The question would seem to be settled in this State. In *People ex rel. New York, Westchester & Boston R. Co.* v. *Waldorf* (168 App. Div. 473) JENKS, P. J., said: ' I think that the sounder rule is that which denies the right to assess station property for a street improvement such as is contemplated in this case. * * * And the reason for exemption rests in the inability to perceive how such premises are made by the improvement any more valuable for the purposes for which the railroad company can use them. The widening of the street presumably improves it for travel and for access, but the railroad is not benefited in that it carries more passengers or receives a greater compensation.' On motion for reargument in the Court of Appeals (*sub nom. People ex rel. Millbrook Co.* v. *Waldorf*, 217 N. Y. 99), that court expressed approval of the disposition of the matter by Presiding Justice JENKS.

" The only claim that the property is benefited that is advanced by the corporation counsel is that a more ready access to the station property is thereby afforded. This benefit is enjoyed by the public. We cannot assume that more people will travel on this line because access to its station is made more convenient to the public; and if they should, the benefit would be to the railroad as a carrier of passengers, and not because of increase in value of the station property. The final argument is that the station building is to be removed from its present location to the other side of the track. The platforms remain the same and access to the new station building will be over an elevated structure, the approach to which will be over these grounds, and it has not been shown that the railroad company intends to abandon the use of these lands for its purposes as a common carrier. The assessment was not warranted in law. The order should be reversed." (See, also, *People ex rel. New York, W. & B. R. Co.* v. *Waldorf*, 168 App. Div. 473, 476; 217 N. Y. 96; *Matter of City of New York* [*Juniper Avenue*], 233 id. 387, 392.)

The sole question, therefore, here for decision is whether the act of the board of estimate and apportionment in fixing an area of assessment, which is clearly wrong in fact and wholly without authority, may be reviewed by certiorari.

In *Hassen* v. *City of Rochester* (65 N. Y. 516, 519) the court said: " It was evidently contemplated by the provisions of the charter to which reference has been made, that the common council were to determine what portion of the city would be benefited by the improvement, and to declare whether the whole or what part of the expense incurred therefor should be defrayed by an assessment on the owners and occupants of the houses and lands within the

territory which they should deem to be benefited, and the direction which they were required to give the assessors, as provided by section 192,* imposed on them the duty to make such assessment on all of such owners and occupants in proportion, as nearly as might be, to the advantage which each should be deemed to acquire by the making of the improvement. They had no authority or power to reverse, alter or modify the decision of the common council in reference to the territory that would be benefited. That was conclusive on them. They were bound to assume that every part thereof derived some benefit and advantage, and on that assumption to assess thereon the amount of expense in proportion to the extent of such benefit and advantage, as it should be determined by them. Their discretion or judgment was confined to the proportion of advantage which each parcel of land within the designated district derived from the improvement, and they were not authorized to exempt any land therein entirely, from an assessment; such exemption necessarily resulted in an injury to, and to the prejudice of the plaintiffs. This question is so fully and ably considered by TALCOTT, J., in his opinion at General Term, in the court below, that I deem it unnecessary to add anything further in relation to it, than to say that I adopt the views expressed by him on the subject."

In *Ellwood* v. *City of Rochester* (122 N. Y. 229, 236) the court said: " They were bound to assume that every separate piece of real estate derived some benefit and advantage, for the common council had so determined. And they were without authority to modify such determination. (*Hassen* v. *City of Rochester*, 65 N. Y. 516; 67 id. 528.)

" But the commissioners, in disregard of the determination of the common council that all of the lands embraced within the designated limits would be specially benefited by the improvement, proceeded to divide the territory into two districts, one of which they decided would receive a special benefit from such improvement and the other a general benefit. The sub-district deemed specially benefited, they assessed by apportioning to and upon each lot a sum per foot front, without reference to the value of the buildings or improvements thereon. The amount of the assessment upon the sub-district deemed generally benefited they placed thereon, by a general assessment by percentages on the real property therein, taking the valuations from the last assessment-roll for general city and county taxes, making changes of value in accordance with their judgment, and placing different

---

* See Laws of 1861, chap. 143, § 192.— [REP.

percentages upon the various streets, having reference to their location with respect to the improvement. The referee has so found, and the General Term has approved the finding. The effect of such unauthorized action was to contract the area of special benefits as determined by the common council. Within the lines prescribed by that body, the commissioners arbitrarily established another line, and beyond its confines they determined there were no special benefits, but only general benefits, and upon which they proceeded to make an assessment by a totally different rule than that adopted in the sub-district which they decided to be specially benefited."

In *Matter of Livingston Street* (18 Wend. 556) the court said: " It may well be doubted whether the Court can in this form review the proceedings of the corporation in fixing the district of assessment. By the first section of the act of 1833,* the corporation, ' to the end that the persons who will be assessed may be the better ascertained,' before giving notice of an application to open any street, is required to ' determine and fix the limit or district in which the assessment shall be made, or beyond which the same shall not extend; and a description of such limit or district shall be published with such notice, and form a part thereof.' The notice is given for the purpose of enabling all persons who may be interested to remonstrate against the proposed improvement. If the district was either too large or too small, any person who might think himself aggrieved should have appeared before the common council and made the objection; and the corporation would then have decided whether the district should be altered, or whether the proposed improvement ought to be abandoned. Their decision upon that matter might probably be reviewed by certiorari; but it is not necessary to pass upon that question in the present case."

Although it is not seriously argued that the board of estimate and apportionment has the power to fix an area of assessment in the arbitrary manner here followed, the proposition is advanced that, the resolution having been adopted, there is no redress for the petitioner. In fixing an area of assessment the board of estimate and apportionment has heretofore maintained that its action was a finality, and not reviewable; that, while those levying the assessment were vested with discretion to apportion it, they had no power to review or interfere with the area of assessment which is presumed to be governed by the area of benefit.

Here, however, the board so fixed the area of assessment that

---

* See Laws of 1833, chap. 319, § 1.— [REP.

the whole cost of the improvement must be borne by petitioner, charging it with the cost thereof in violation of the terms of the contract, which the board of estimate and apportionment relies on as the basis for its action.

We have, therefore, reached the conclusion that certiorari is the proper remedy to review the unauthorized and arbitrary act of the board of estimate and apportionment in thus fixing the area of assessment.

. The order should be sustained and the proceedings annulled and set aside, with fifty dollars costs and disbursements to the petitioner.

Clarke, P. J., Dowling, Finch and McAvoy, JJ., concur.

Order sustained and proceedings annulled, with fifty dollars costs and disbursements to the petitioner.